# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| ELICIA CUTSINGER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     No. 4:18-CV-4 CAS |
| | ) |
| GYRUS ACMI, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter was before the Court on defendants Gyrus ACMI, Inc., Gyrus ACMI, L.P., Olympus America Inc., and Olympus Corporation of the Americas' Motion to Preserve Evidence and Motion for Leave to Conduct Rule 35 Inspection to Collect Decedent's Tissue Samples. Plaintiff opposes the motion and filed a Cross Motion for a Protective Order, as well as an Unopposed Emergency Motion for Expedited Ruling on Plaintiff's Motion for Protective Order and Defendants' Motion to Preserve Evidence. In an Order dated today's date, the Court granted plaintiff's motions for an expedited ruling and for a protective order, and denied defendants' motion to preserve evidence and to conduct a Rule 35 inspection. This Memorandum and Order sets forth the reasons for the Court's rulings.

### *Background and Discussion*

The Court was informed that the plaintiff in this case, Elicia Cutsinger, died the evening of February 26, 2019. In her Complaint, plaintiff alleges that in 2013 she underwent a laparoscopic surgical procedure in which the surgeon used a device, the GYRUS LPM Plasma Morcellator, to morcellate, or cut into small fragments, her uterus. Plaintiff alleges the Defendants marketed, distributed, and/or sold the GYRUS LPM Plasma Morcellator. She alleges subsequent to that

surgery, she was diagnosed with leiomyosarcoma, a deadly form of uterine sarcoma, and that the malignant cells were spread throughout her abdomen and pelvis by the GYRUS LPM Plasma Morcellator, worsening her condition.

In their motion and memorandum, filed yesterday afternoon, defendants request that the Court order the preservation of plaintiff's remains to allow tissue samples to be taken and for pathologic testing. Defendants argue that plaintiff's medical condition is at issue in this case, and retained experts in this matter "disagree as to the nature of [Ms. Cutsinger]'s disease process." Doc. 136 at 2. In support of their motion, defendants attach to their memorandum the expert report of Dr. Robboy and excerpts from Dr. Cao's deposition. Defendants, however, have not submitted evidence, such as an affidavit, explaining why information obtained from an autopsy or post-mortem tissue samples are necessary in this case. In other words, what more would be obtained from an autopsy or post-mortem tissue samples than is already available from the numerous biopsies and tissue samples that have been taken to date.[1]

Plaintiff's counsel filed a memorandum in opposition and cross motion this morning, March 1, 2019. Plaintiff's counsel states that he opposes defendants' motion on procedural and substantive grounds, and asserts that defendants' request is overly broad and non-specific, in that defendants have not stated what they intend to do and when. However, the memorandum states that in a "good faith endeavor to accommodate defendants' request," plaintiff's family made arrangements at their expense to have "an independent autopsy" performed at the University of Missouri by Dr. Adelstein

---

[1]Defendants also attached to their motion email correspondence between plaintiff's counsel and defendants' counsel. Plaintiff's counsel informed defendants' counsel of Ms. Cutsinger's death at approximately 1:00 p.m. on February 27, 2019. Defendants' counsel responded at 1:35 p.m. with an email requesting that Ms. Cutsinger's "body be preserved."

on today's date at 11:00 a.m.[2] Plaintiff's counsel represents that Dr. Adelstein "is not working as a consultant expert or retained expert, and the autopsy will generate a medical record accessible to all parties. Further, the scope of review includes to preserve tissue from pelvic masses in accordance with appropriate protocols for the preparation of slides." Doc. 137 (quotations omitted).[3] Plaintiff's counsel also represents it is hospital policy that outside consultants are not permitted at the autopsy, and neither plaintiff not defendants can have a consultant or expert there.

According to plaintiff's memorandum, Ms. Cutsinger's body was at a funeral home in Hannibal, Missouri, and arrangements were made to transport her body to Columbia, Missouri for the autopsy this morning, and for the return of her body to Hannibal for embalming and burial preparations. Plaintiff's counsel states that Ms. Cutsinger's family desires to have an open viewing and burial early next week.

Defendants filed a reply memorandum in support of their motion, in which they state they were informed about the scheduled autopsy yesterday evening. Defendants object to the autopsy as arranged because it was done without their input, and their pathology expert cannot be present. Defendants state that they provided plaintiff's counsel with a sample autopsy protocol and requested that the autopsy be complete and with a focus on the cause of death "as well as the extent of plaintiff's underlying disease process." Doc. 139 at 2. Defendants ask in their reply that the Court

---

[2]Plaintiff's counsel represents that 11:00 a.m. is latest time available that the autopsy could be performed today.

[3]Plaintiff's counsel attached to the memorandum an email dated February 28, 2019, at 2:14 p.m. from plaintiff's counsel to the University of Missouri, in which he asks that the hospital perform an autopsy, wherein the scope of review is "(1) to perform an autopsy as you deem reasonably appropriate to determine cause of death, if possible; and (2) to preserve tissue from pelvic masses in accordance with appropriate protocols for the preparation of slides." Doc. 137, Ex. B.

"allow defendant's pathology expert, Julie Turner, to be present at the autopsy at 11:00 a.m. and, consistent with the protocol that she outlined, collaborate with Dr. Adelstein and gather relevant tissue samples, obtain information about the cause of Plaintiff's death and take any necessary photographs." Id. at 3-4.

Plaintiff's counsel filed a document entitled Plaintiff's Supplemental Response [in] Support of Cross Motion for a Protective Order and Response to Defendant's Motion to Preserve the Body, in which he stated that defendants' proposed autopsy protocol was sent to the University of Missouri shortly after being received. Attached to the document was an email dated March 1, 2019, at 8:38 a.m., from plaintiff's counsel to the University attaching a PDF document entitled "CAP Practice Guidelines for Autopsy." Doc. 140 at 5.

Based on defendants' reply, the Court finds defendants have abandoned their general request for the preservation of Ms. Cutsinger's body and for a Rule 35 inspection to allow tissue samples to be taken and for pathologic testing. As for defendants' request that the Court allow defendants' expert to be present at the scheduled autopsy, defendants have provided the Court with no authority to support such request. They have not explained why, in light of the fact that the autopsy is being performed as a formal independent autopsy, the presence of their expert is necessary. Moreover, the request was not made in a timely manner to accommodate such a request. The Court recognizes that the request was made within a day of defendants' being notified of the scheduled autopsy. That said, it is apparent from the record in this case that Ms. Cutsinger's death was not unexpected. The parties could have made arrangements long ago for what to do in the event of her death with regard to an autopsy and the taking of tissue samples. The Court is not inclined to add to the grief of Ms. Cutsinger's family by delaying their funeral arrangements, especially because defendants have not articulated in what way the autopsy, as arranged, is prejudicial to them and their collection of

4

evidence.  As for defendants' proposed autopsy protocol, plaintiff's counsel did forward this document to the hospital for Dr. Adelstein's review.  The procedures Dr. Adelstein followed in conducting the autopsy can be addressed later in these proceedings.

                                             _____
                                             **CHARLES A. SHAW**
                                             **UNITED STATES DISTRICT JUDGE**

Dated this  1st  day of March, 2019.